```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
    BENTZION URBACH,                          :
                                              :
                          Plaintiff,          :     MEMORANDUM DECISION AND
                                              :     ORDER
                 - against -                  :
                                              :     25-cv-2030 (BMC)
    DEUTSCHE LUFTHANSA AG,                    :
                                              :
                          Defendant.          :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This action arises out of a pre-flight incident between a passenger and crew. Before takeoff, flight attendants found plaintiff in his seat unconscious and unresponsive. The flight attendants were eventually able to wake him up and thereafter made him disembark the plane. Plaintiff has sued for $20,000 in damages under the Convention for the Unification of Certain Rules for International Carriage by Air (May 28, 1999), Int'l Civ. Aviation Org. Doc. No. 9740, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (the "Montreal Convention"). Because the Montreal Convention requires a "accident which caused [a bodily] injury," and plaintiff has failed to raise a factual issue that the incident falls within this definition, the Court grants defendant's summary judgment motion.

## BACKGROUND

Lufthansa flight LH 405 was supposed to take off from New York to Germany. Plaintiff, who was traveling to Tel Aviv, boarded the flight without issue, early enough to settle into his seat and fall asleep. The flight attendants woke plaintiff up and explained they were concerned for his health because he was unresponsive. Plaintiff assured them he was "okay to fly." Nonetheless, LH 405 returned to the gate, where plaintiff was asked to, and did, disembark.

Plaintiff believes he was asked to disembark LH 405 because of antisemitic animus. In his complaint, plaintiff describes himself as "the only visibly religiously dressed Jewish passenger" and in the next sentence states he received "hostile glares from two flight attendants." Plaintiff testified that "the experience was mortifying" and that "[e]very aspect of it caused emotional distress [and] embarrassment." After disembarking LH 405, Plaintiff spent the night at the airport and purchased another ticket to Tel Aviv from another air carrier. Plaintiff claims he was physically and psychologically injured by defendant asking him to disembark LH 405.

For purposes of this motion, the Court assumes there was some physical contact between the flight attendants and plaintiff when they tried to wake him up and escort him off the plane. But plaintiff has described that contact, and the results of that contact, vaguely, and in different ways. In the original and amended complaint, plaintiff alleged the flight attendants "pinched [him] hard enough that he had a visible bruise on his arm." At his deposition, when asked whether he sustained any injuries, plaintiff testified, "like, nothing long term . . . maybe a little bruise from the pinch or something." He then testified that he "didn't really see that there was . . . a bruise there, but [felt] a little soreness." He finally testified that he had some "soreness" on the upper left side of his body, "from maybe shoving, I don't know." In his opposition memorandum, plaintiff backtracked further on the alleged visible bruise, acknowledging that "the injury complained of did not manifest itself on the surface of the skin such that it was photographable."

In its responses to plaintiff's interrogatories as to why he was asked to disembark LH 405, defendant stated: "Plaintiff was deplaned from the aircraft due to a medical safety concern. Members of the crew may have knowledge." And in its initial disclosures (and separately in another interrogatory), defendant identified by name the crew members working aboard LH 405

that day, and informed plaintiff they could be contacted by counsel. Plaintiff forwent that opportunity and in turn, deposed no witnesses. Discovery then closed and the Court set the matter down for final pretrial proceedings.

The parties filed a joint proposed pretrial order stipulating to the following facts, among others:

- Plaintiff did not acquire any costs regarding emergency treatment following the subject incident.

- Plaintiff did not acquire any costs for mental health treatment following the subject incident.

- Plaintiff did not acquire any costs for physical therapy following the subject incident.

- Plaintiff did not acquire any costs for medications following the subject incident.

- Plaintiff did not sustain any costs as a result of the soreness that he experienced from the subject incident.

- Plaintiff is not claiming loss of income in connection to the subject incident.

- Plaintiff had no hotel expenses in connection to the subject incident.

- Plaintiff did not incur any international cellphone roaming fees in connection with the subject incident.

- Plaintiff did not incur any expenses for baggage delay in connection to the subject incident.

- Plaintiff secured substitute travel arrangements on a different carrier in connection to the subject incident.

- Plaintiff did not seek medical attention form a doctor for the soreness he described occurring from the subject incident.

Defendants have moved for summary judgment. In opposing, plaintiff request that the Court reopen discovery. For the reasons below, the Court declines to reopen discovery, grants defendant's motion, and dismisses plaintiff's claims.

## DISCUSSION

I.    **Request to Reopen Discovery**

Plaintiff states that discovery must be reopened so that he can identify "Lufthansa employees who were present and involved with the instant dispute" because he is "entitled to depose and/or question the flight attendants and other employees involved to understand the extent of incident, force used, and other relevant information to prove an injury occurred." But that plane took off long ago. As described above, defendant identified the "Lufthansa employees who were present an involved with the instant dispute" practically immediately, in its initial disclosures. It did so again in response to plaintiff's interrogatories, naming eleven crew members working on LH 405 that day. Whatever plaintiff's reasons were for not acting on this information at the time, it is not good cause warranting additional discovery.

Plaintiff tells the Court that defendant has been noncompliant in its discovery obligations, but his assertion is conclusory. He has simply annexed defendant's responses, apparently expecting the Court to plow through them and reach its own determination that his conclusory assertion is correct. Putting aside the adage that "judges are not like pigs, hunting for truffles buried in the record," Kane v. DiBlasio, 19 F.4th 152, 167 n.15 (2d Cir. 2021) (quoting United States v. Morton, 993 F.3d 198, 204 n.10 (3d Cir. 2021)), plaintiff still has not addressed the central issue – he had the names of defendant's employees he now wants to depose at the inception of discovery and never took any action to follow up.

Plaintiff is charged with knowing his obligations under Section I(E)(2) of the Court's Individual Practice Rules to promptly, upon any noncompliance with discovery, exhaust all legal remedies to obtain compliance, and that his failure to do so "may result in a waiver of the requested discovery." By waiting to raise these concerns until filing his opposition

4

memorandum on summary judgment, plaintiff failed to act promptly, and thereby waived any ability to seek additional discovery.

Finally, because of the conclusions of law the Court reaches below, any further discovery would be futile. Even if a Lufthansa employee were to admit at deposition that plaintiff was removed from LH 405 because he was dressed as an Orthodox Jew – which seems exceedingly unlikely – plaintiff still has no case because that would still not meet the requirements of an accident under the Montreal Convention. Similarly, it is farfetched to suppose that a Lufthansa employee would testify to witnessing or inflicting a bodily injury severe enough to fall within the Montreal Convention, when, as shown below, even plaintiff himself does not do so. From a proportionality perspective, coupled with plaintiff's failure to pursue discovery in this case, there is no basis to reopen discovery.

## II. Summary Judgment Standard

Rule 56 provides that summary judgment is warranted where the moving party – here, defendant – "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts "in the light most favorable to the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for" plaintiff. See id. (plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts") (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment"). Plaintiff must fight facts with facts – it is not enough to simply deny the facts submitted by defendant. See Goenaga

5

v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, plaintiff must marshal "concrete evidence from which a reasonable juror could return a verdict in his favor." See Anderson, 477 U.S. at 256.

### III. The Montreal Convention

Defendant is an international air carrier, and therefore its liability is "governed by international agreement rather than the local law of individual nations." Badar v. Swissport USA, Inc., 53 F.4th 739, 743 (2d Cir. 2022). The international agreement here is the Montreal Convention, which succeeded the Warsaw Convention, keeping many of the same, if not substantially similar provisions. Indem. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 78 (2d Cir. 2024) ("The Montreal Convention's text 'hews closely' to that of its predecessor") (quoting Badar, 53 F.4th at 744). For that reason, "Montreal Convention provisions may be analyzed in accordance with case law arising from substantively similar provisions of . . . the Warsaw Convention." Cohen v. Am. Airlines, Inc., 13 F.4th 240, 245 (2d Cir. 2021).

Plaintiff seeks recovery under Articles 17 and 19 of the Montreal Convention. Defendant asserts that it is entitled to summary judgment because plaintiff cannot show a genuine dispute of a material fact supporting a claim under either Article.

#### A. Article 17

Under Article 17, defendant "is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1); see also E. Airlines, Inc. v. Floyd, 499 U.S. 530, 552 (1991) ("international carriers [are subject] to strict liability for Article 17 injuries sustained on flights connected with the United States"). There are thus two questions for the

Court. The first question is if there is a genuine dispute of material fact bearing on whether plaintiff disembarking LH 405 was an "accident" within the Montreal Convention. If so, the second question is whether there is a genuine dispute of a material fact bearing on whether plaintiff suffered a "bodily injury" from that accident.

1. **Accident**

Neither party addresses the Montreal Convention's "accident" element in their motion papers. Plaintiff's opposition omits the word entirely, and defendant relies on its conclusion as to the "bodily injury" element mooting the "accident" element. Because the Court must view the facts in the light most favorable to the plaintiff, the Court proceeds to determine whether the facts here could allow a reasonable jury to conclude that plaintiff's disembarkation of LH 405 was an "accident" within the Montreal Convention.

The Second Circuit defines an Article 17 accident as "an unexpected or unusual event or happening that is external to the passenger." Cohen, 13 F.4th at 244 (quoting Air France v. Saks, 470 U.S. 392, 405 (1985)); see also Saks, 470 U.S. at 405 ("This definition should be flexibly applied after assessment of all circumstances surrounding a passenger's injuries."). However, any "procedure that is conducted in the routine and expected manner" is not an "accident within the meaning of the Convention," even if a passenger is injured. Fishman by Fishman v. Delta Air Lines, 132 F.3d 138, 143 (2d Cir. 1998) ("a plaintiff's unusual reaction to a routine and expected incident of airline travel, including any procedure that is conducted in the routine and expected manner, is no accident within the meaning of the Convention."). But routine procedures that are "carried out in an unreasonable manner" could be an accident, and any injury sustained thereby might fall in the scope of Article 17. Id. ("an injury resulting from routine

7

procedures . . . can be an 'accident' if those procedures or operations are *carried out* in an unreasonable manner.")

The question is thus two-fold. The Court must first determine whether making a passenger disembark for medical concerns is routine and expected. If so, the Court must then determine whether it was conducted in an unreasonable manner.

Air carriers have broad authority to "refuse to transport a passenger [that] the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902. "An airline's discretion to reject a passenger must be accepted if exercised in good faith and for a rational reason" because "the airline must often make such decisions on the spur of the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information." Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 397 (S.D.N.Y. 2004). And incidents "arising from a passenger's medical conditions are . . . not 'accidents' under the Montreal Convention." Safa v. Deutsche Lufthansa AG, 42 F. Supp. 3d 436, 441 (E.D.N.Y. 2014) (even "an airlines failure to respond with adequate medical assistance to an injury suffered on board an aircraft does not constitute an 'accident' under the Montreal Convention.") (collecting cases). It is therefore difficult to conclude that making a passenger disembark a plane for medical concerns, as plaintiff acknowledged in his interrogatory answer, is anything but routine and expected.

Plaintiff alleges that this routine and expected procedure was carried out in an unreasonable manner – namely, that defendant did so with antisemitic animus.[1] These allegations have no bearing on plaintiff's claims under the Montreal Convention. See King v. Am. Airlines, 284 F.3d 352, 355 (2d Cir. 2002) (plaintiff's "discrimination claim . . . is not

---

[1] Plaintiff does not make this argument explicitly in his complaint or summary judgment papers. But the court, interpreting the facts in the light most favorable to plaintiff, finds this to be the most cognizable argument attributable to plaintiff's description of the facts.

actionable under the treaty."); see also Agmon v. Jetblue Airways Corp., No. 24-cv-2393, 2025 WL 2733289, at *1 (E.D.N.Y. Sep. 25, 2025) ("even intentional discrimination claims . . . are not . . . actionable under the Montreal Convention").

Plaintiff's case is similar to Agmon. There, "an orthodox Jewish family . . . wrapped *tefillin*, put on yarmulkes, and prayed in Hebrew" in front of airline employees who gave them "dirty looks after observing [their] religious practices and overhearing [them] speaking Hebrew." 2025 WL 2733289, at *1. After boarding, one member of the family removed his sanitary face mask, ostensibly in violation of COVID restrictions, and they were asked to disembark from the plane. Although the family argued the mask removal "was pretextual and in reality motivated by the [airline's] discriminatory animus," the court dismissed the claims because discrimination cannot be an accident – an "injury-causing event" – under Article 17. Id.

There is no genuine dispute that plaintiff was made to disembark from LH 405 after flight attendants found him unconscious and unresponsive in his seat. Beyond the conclusory allegations of discrimination, plaintiff's account shows that disembarkation was "conducted in the routine and expected manner." Delta Air Lines, 132 F.3d at 143. For that reason, plaintiff has failed to show that there was a genuine dispute of material fact bearing on whether his removal was an "accident" under Article 17 of the Montreal Convention.

### 2. Injury

Even assuming that plaintiff being made to disembark LH 405 was an "accident," that would not change the result because there is no genuine dispute of material fact bearing on whether plaintiff suffered a "physical injury." As a preliminary matter, it is irrelevant whether plaintiff had a visible bruise, because Article 17 encompasses "death, physical injury, or physical manifestation of injury." Floyd, 499 U.S. at 552. "Injury" in this context is rooted in the treaty's

9

original French – *dommage survenu en cas de . . . lesion corporelle* – and means "bodily injury." Ehrlich, 360 F.3d at 375.

The distinction of "physical injury" and "physical manifestation of injury" warrants a brief discussion. A physical injury is a physiological change to the body, such as "bruises, lacerations and broken bones" which are caused by an objective, verifiable impact. See Vumbaca v. Terminal One Grp. Ass'n, L.P., 859 F. Supp. 2d 343, 365 (E.D.N.Y. 2012) (listing examples of bodily injuries that passengers suffer during an airplane accident) (quoting Jack v. Trans World Airlines, 854 F. Supp. 654, 664 (N.D. Cal. 1994)). Of course, all physical bodily injuries are accompanied by a physical manifestation of that bodily injury: a bruise manifests in skin discoloration; a laceration manifests in parted flesh; and a broken bone manifests in, well, a broken bone.

But not all physical manifestations of bodily injuries are visible to the naked eye. A cerebral contusion, for example, occurs when brain tissue is bruised by impact, which remains hidden under the skin. Still, most doctors can diagnose a cerebral contusion without opening a patient's skull, and often even without a CT or MRI scan. That's because a cerebral contusion manifests itself in known physical *sensations*: headache, dizziness, and loss of consciousness, for instance. These invisible physical sensations are the physical manifestations of a cerebral contusion, and thus a cerebral contusion (and other like injuries) could be a bodily injury within the gambit of Article 17.

The problem is that not all invisible physical sensations are physical manifestations of a bodily injury. Indeed, "[h]eadache, nausea, hunger, thirst, and discomfort" do not by themselves constitute Article 17 injuries because they are not "the result of an objectively verifiable disease or impact on the body [and] they are difficult to quantify and easy to fabricate." Vumbaca, 859

10

F. Supp. 2d at 372. In short, an invisible physical sensation alone won't cut it – an Article 17 plaintiff must connect the invisible physical sensation to an objective, verifiable impact to his body.

Here, plaintiff admits that there was no visible bodily injury. Plaintiff agreed at his deposition that he "didn't really see that there was . . . a bruise there, but [felt] a little soreness." The question therefore is whether his invisible physical sensation – a little soreness – is a physical manifestation of a bodily injury. The answer is no, because plaintiff cannot connect his soreness to an "objectively verifiable . . . impact on [his] body." See Vumbaca, 859 F. Supp. 2d at 372. Indeed, plaintiff himself cannot identify the catalyst of his soreness, speculating simultaneously that it was "maybe . . . from the pinch or . . . [f]rom maybe shoving" but ultimately said, "I don't know." All plaintiff offers is that after he fell asleep, he was woken up by flight attendants and made to disembark the plane, and thereafter felt sore. That is simply not enough.

That is what the court held in Tharp v. Delta Air Lines, Inc., 552 F. Supp. 3d 1091, 1100 (D. Or. 2021). There, the court granted summary judgment for the airline defendant because there was "no evidence of a physical injury resulting from the event other than [the plaintiff's] unsubstantiated claim that the contact to her arm caused 'irritation and redness' on her skin that 'lasted for hours after the flight.'" Id. As in Tharp, our plaintiff offers no evidence of a physical injury other than his unsubstantiated claim that some contact to his arm made him feel some soreness. Even viewing that in the light most favorable to plaintiff, no jury could find it to be a "bodily injury" under the Montreal Convention.

Absent physical injuries, the Court cannot consider plaintiff's alleged psychological injuries. See Floyd, 499 U.S. at 552-53 (air carriers could not be held liable under Article 17 for

11

mental injuries that did not accompany bodily injuries); Ehrlich, 360 F.3d at 366 (Article 17 provides no relief for "mental injuries that . . . are not caused [by] bodily injuries").

Because there is no genuine dispute as to whether plaintiff's soreness is attributable to an objective, identifiable impact, there is no dispute that plaintiff did not suffer an "injury" under Article 17 of the Montreal Convention.

**B.    Article 19**

Under Article 19, defendant "is liable for damage occasioned by delay [unless] it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Montreal Convention art. 19. While the "Supreme Court has indicated that Article 19 covers harms that are distinct from the 'personal injuries' recoverable under Article 17," Vumbaca, 859 F. Supp. 2d at 367 (citing El Al Isr. Airlines v. Tsui Yuan Tseng, 525 U.S. 155, 168-69 (1999), "[c]ourts in the Second Circuit have found that Article 19 only applies to '*economic* loss occasioned by delay in transportation" and thus "[e]motional harms are not compensable under Article 19." Id. (quoting Sobol v. Cont'l Airlines, No. 05-cv-8992, 2006 WL 2742051, at *5 (S.D.N.Y. Sept. 26, 2006)).

Plaintiff's stipulation that he "is not claiming loss of income . . . hotel expenses . . . [nor] any expenses for baggage delay in connection to the subject incident" is dispositive. There is no genuine dispute of a material fact bearing on whether plaintiff suffered any purely economic loss from the delay.

## CONCLUSION

Defendants' motion for summary judgment is granted.

**SO ORDERED.**

                                                *Brian M. Cogan*
                                                         U.S.D.J.

Dated:  Brooklyn, New York
        October 18, 2025